IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIE MAUDE JACKSON,
        Plaintiff,

vs.                                Case No. 5:09cv144/MCR/EMT

UNITED STATES OF AMERICA,
        Defendant.
_____/

**ORDER**

Plaintiff is an inmate who proceeds pro se and has paid the filing fee in full.[1] Before the court is Plaintiff's second amended complaint under 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), or 28 U.S.C. § 1346 (Doc. 20). From a review of the second amended complaint, the court concludes that the facts as presented fail to support a viable claim for relief. The court therefore will allow Plaintiff an opportunity to clarify her allegations in a third amended complaint.

Plaintiff presently is housed at the Federal Correctional Institution in Marianna, Florida ("FCIM"), where the events giving rise to this action apparently took place. In her second amended complaint Plaintiff names as Defendants the United States of America and six FCIM employees (*see* Doc. 20 at 1, 2–4). Plaintiff alleges the following facts in her second amended complaint. Plaintiff began suffering ear problems on November 1, 2003; although Plaintiff requested medical attention,

---

[1] Although Plaintiff prepaid the filing fee in full, because she is a prisoner and seeks redress from "a governmental entity or office or employee of a governmental entity," the court is required to conduct a review of Plaintiff's complaint. *See* 28 U.S.C. § 1915A. In its review the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A.

she was not examined until November 18, 2003, when she was advised she had an ear infection and was prescribed antibiotics (*id.* at 7). After some initial improvement, Plaintiff's condition worsened. She again requested an appointment with the medical department, but she received no response. Eventually, on January 20, 2004, Defendant Edgar Morales, M.D., a FCIM physician, prescribed a second round of antibiotics for Plaintiff (*id.*). When Plaintiff continued to complain about her ears, including that she was experiencing pain and could not hear, a hearing test was ordered. Plaintiff did not receive the test until two months later. The results of the test indicated that Plaintiff had a severe ear infection and had lost some hearing (*id.*).

On May 4, 2004, Plaintiff noted a yellow fluid draining from her ear; the ear was also painful (Doc. 20 at 7). She requested immediate medical attention but did not receive a response to her request until July 8, 2004, when she was seen by Defendant Julia Berrios, M.D, a physician at FCIM. Defendant Berrios advised Plaintiff that she needed surgery but made no attempt to get approval for the surgery. Plaintiff's ear problems continued, despite her complaints to Defendant Morales. Throughout 2005 Plaintiff was given medication for her ear infections, but the treatment did not relieve the infections or the associated severe headaches; Plaintiff also could not hear clearly (*id.* at 8). When Plaintiff's employer inquired on her behalf regarding the status of Plaintiff's recommended surgery, the medical department stated that Plaintiff did not have a medical problem (*id.*).

On June 13, 2006, Plaintiff was sent to private physician Stephen J. Toner, M.D., who recommended that surgery be performed on Plaintiff soon as possible (Doc. 20 at 8). On July 30, 2006, at the recommendation of Dr. Toner and Defendant Alfredo Guzman, M.D., a FCIM physician, Plaintiff underwent at CT scan, which revealed a soft tissue mass in the left external ear canal (*id.*). As Plaintiff waited to have surgery on her ear, she pursued available administrative remedies, including writing "cop-outs" to Defendant Scott Middlebrooks, FCIM Warden, and Defendant John Seay, FCIM Medical Director (*id.* at 8–9). Although Plaintiff continued to lose hearing in her left ear, medical department staff persisted in claiming that she had no medical problems with the ear. On November 6, 2006, Plaintiff underwent ear surgery (*id.* at 9), but, according to Plaintiff, FCIM medical staff refused to provide appropriate aftercare, including failing to make arrangements for a follow-up appointment with Dr. Toner in December 2006.

When Plaintiff reported drainage from the ear, an appointment for January 4, 2007, was scheduled, but this appointment later was canceled (Doc. 20 at 9). Plaintiff wrote cop-outs to Defendant Seay about the missed appointment with Dr. Toner and also complained to Defendant Middlebrooks, who informed Plaintiff that it was not up to Dr. Toner to determine when she should see him but rather up to FCIM medical staff (*id.*). Plaintiff then directed her complaints to the medical department, which continued to ignore her; she was not given antibiotics and not scheduled for an appointment at that time, either at FCIM or with Dr. Toner. Plaintiff was seen by an "outside physician" [presumably Dr. Toner] in May 2007; a return visit was recommended but "this did not happen" (*id.* at 11). Although Dr. Toner wrote prescriptions for Plaintiff, she did not receive the medication from the medical department unless certain officials spoke up on her behalf or she made repeated requests; even then, according to Plaintiff, she received pills to place inside her ear instead of the drops that had been ordered by Dr. Toner (*id.*). Plaintiff asserts that at the date of the filing of her lawsuit,[2] she "still [has] not been seen by an outside doctor" and that appointments with the medical department, although scheduled, have been canceled (Doc. 20 at 12). For example, Plaintiff contends that although Defendant Nikki Gardener granted her inmate request dated August 6, 2009, by scheduling a medical appointment for August 20, 2009, the appointment was later canceled (*id.*). Alleging that Defendants have been deliberately indifferent to her serious medical needs in violation of the Eighth Amendment, Plaintiff seeks a total of 3.5 million dollars in relief (*id.* at 15).

As Plaintiff was previously advised, the Supreme Court has held that certain causes of action for damages may be brought against a federal officer based on a violation of constitutional rights. Bivens, 403 U.S. at 396, including the violation of prisoner's Eighth Amendment right to adequate medical care. Carlson v. Green, 446 U.S. 14, 100 S. Ct. 1468, 1474, 64 L. Ed. 2d 15 (1980). The Eighth Amendment is violated when there is deliberate indifference to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). In order to establish a claim of deliberate indifference, the prisoner must show: (1) she had a serious medical need (the objective component); (2) the prison official acted with deliberate indifference to that serious medical need (the subjective component); and (3) the official's wrongful conduct caused the

---

[2] Plaintiff signed, and apparently mailed, the initial complaint on April 15, 2009 (*see* Doc. 1 at 7).

injury.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Id.* (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  To satisfy the subjective component, the prisoner must show that the prison official subjectively knew of a risk of serious harm, that the official disregarded that risk, and that the official's conduct was more than gross negligence.  Goebert, 510 F.3d at 1326–27.  Deliberate indifference may be shown where there is "[grossly incompetent or inadequate care," *see* Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989), the official refuses to provide medical care he knows is necessary, *see* Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985), or the official delays in providing necessary diagnostic care or medical treatment for non-medical reasons.  *See* H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1086 (11th Cir. 1986).  Mere inadvertence, negligence, or medical malpractice does not rise to the level of deliberate indifference, Estelle, 429 U.S. at 105, "[n]or does a simple difference in medical opinion." Waldrop, 871 F.2d at 1033.

As it noted in its prior order directing Plaintiff to amend, the court is satisfied at this early stage of the litigation that Plaintiff's allegations are sufficient to meet the objective component of an Eighth Amendment medical claim, that is, she has identified a serious medical need regarding her ear condition.  Her complaint remains deficient, however, in several respects.  First, as the court previously instructed Plaintiff, the United States is not a proper defendant in a Bivens action.  *See* FDIC v. Meyer, 510 U.S. 471, 484–86, 114 S. Ct. 996, 127 L. Ed.2d 308 (1994); McCollum v. Bolger, 794 F.2d 602, 608 (11th Cir. 1986).  As noted, Bivens authorizes civil rights suits filed against federal agents or employees.  Bivens, 403 U.S. at 396.  The United States is immune to such suit.  *See id.* at 410 (Harlan, J., concurring in judgment).  Therefore, Plaintiff should delete the United States of America as a Defendant in this action.  Second, the court again notes that some of Plaintiff's allegations involve actions that occurred prior to April 15, 2005, or the date four years prior to when Plaintiff initiated this action.  Claims brought pursuant to Bivens that are based on events more than four years old may be time-barred.  *See* Uboh v. Reno, 141 F.3d 1000, 1002 (11th Cir. 1998) (limitations period for Bivens actions is taken from the most analogous limitations statute of the state in which the district court sits); Fla. Stat. Ann. § 95.11(3)(p) (residual limitations period

in Florida is four years). Thus, to the extent Plaintiff complains of events that occurred more than four years prior to the filing of this action on April 15, 2009, such claims are untimely. While for the purpose of creating a historical context for her claims Plaintiff may reference events which occurred prior to April 15, 2005, she may not base any claims on these events. As Plaintiff's allegations against Defendants Morales and Berrios involve events that occurred prior to April 15, 2005, these individuals should be deleted as Defendants from the third amended complaint unless Plaintiff can assert claims against them regarding events that took place after April 15, 2005. As to Defendant Guzman, Plaintiff asserts only that he recommended that she be given a CT scan. Absent allegations that suggest Defendant Guzman violated Plaintiff's constitutional rights during the relevant period, Plaintiff should likewise delete Defendant Guzman from the third amended complaint. Similarly, Plaintiff's allegations against Defendant Gardener are insufficient to establish a constitutional violation; without more, this Defendant also should be deleted from the amended complaint.

Third, with respect to Defendants Seay and Middlebrooks, Plaintiff is advised that supervisory officials are not liable under Bivens for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11h Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d

1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff apparently contends that Defendants Seay and Middlebrooks were aware of her complaints regarding her medical care by virtue of the administrative grievances she submitted to them. This vague allegation is insufficient to state a basis for liability against these Defendants under the Eighth Amendment. Plaintiff does not allege facts suggesting that either Defendant Seay or Middlebrooks was subjectively aware of the severity of her ear condition or the alleged inadequacy of the care she was being provided during the relevant period. Furthermore, Plaintiff does not allege facts suggesting that either of these Defendants was personally involved in any decision regarding Plaintiff's medical treatment, that either Defendant implemented any policy which would have limited her care or treatment, or that there is otherwise any causal connection between the conduct of either of these Defendants and the alleged deprivation of adequate medical care. As previously noted, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. *See* Wayne, 197 F.3d at 1106. Therefore, without more, Plaintiff should delete Defendants Seay and Middlebrooks from her third amended complaint.

Finally, as the court has previously advised, Plaintiff must do more than allege negligent conduct, medical malpractice, or a difference in medical opinion, none of which rise to the level of deliberate indifference. Estelle, 429 U.S. at 105; Waldrop, 871 F.2d at 1033. Rather, in order to make out a claim of deliberate indifference Plaintiff must specifically identify the prison official (by name or, if the name is unknown, by job, physical, or other description) whose allegedly wrongful conduct Plaintiff contends caused her complained-of injuries of pain and hearing loss.

Plaintiff should carefully review the foregoing to determine whether she desires to proceed with this action. If Plaintiff wishes to proceed, she must completely fill out a new civil rights complaint form, marking it "Third Amended Complaint." Plaintiff must limit her allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged federal violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed her, she should delete or drop that person as a Defendant from her complaint. Plaintiff's request for relief should be limited to only that which she could recover if she succeeds on her claims. Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded. N.D. Fla. Loc. R. 15.1.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 28 U.S.C. §1331 or 1346. This case number should be written on the form.

2. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and titled "Third Amended Complaint."

3. Plaintiff's failure to file a third amended complaint may result in a recommendation that this action be dismissed for failure to comply with a court order.

Case No. 5:09cv144/MCR/EMT

**DONE AND ORDERED** this 15<u>th</u> day of September 2010.

>/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**