IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIE MAUDE JACKSON,
             Plaintiff,

vs.                                                          Case No. 5:09cv144/MCR/EMT

UNITED STATES OF AMERICA,
             Defendant.
_____/

## ORDER

Plaintiff is an inmate who proceeds pro se and has paid the filing fee in full.[1]  Before the court is Plaintiff's third amended complaint under 28 U.S.C. § 1331 and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), or 28 U.S.C. § 1346 (Doc. 27).  From a review of the third amended complaint, the court concludes that the facts as presented fail to support a viable claim for relief.  The court therefore will allow Plaintiff one final opportunity to clarify her allegations, in a fourth amended complaint.

Plaintiff presently is housed at the Federal Correctional Institution in Marianna, Florida ("FCIM"), where the events giving rise to this action apparently took place.  In her third amended complaint Plaintiff names as Defendants three FCIM employees: physician Edgar Morales; Clinical Director Hernandez-Ricoff; and Warden Scott Middlebrooks (see Doc. 27 at 1–2).  Plaintiff alleges the following facts in her third amended complaint.  Plaintiff began suffering ear problems on

---

[1]  Although Plaintiff prepaid the filing fee in full, because she is a prisoner and seeks redress from "a governmental entity or office or employee of a governmental entity," the court is required to conduct a review of Plaintiff's complaint.  See 28 U.S.C. § 1915A.  In its review the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A.

November 1, 2003. After requesting medical attention, she was examined on November 18, 2003, when she was advised she had an ear infection and was prescribed antibiotics (*id.* at 5). After some initial improvement, Plaintiff's condition worsened. She submitted inmate requests to the medical staff but, over the next seventeen months, was seen only sporadically by staff; additionally, there was a delay in scheduling an appointment with a specialist. Plaintiff eventually was advised, apparently by the specialist, that she should have surgery on her left ear.

Plaintiff informed Defendant Morales on May 20, 2005, of her decision to go forward with the surgery on her left ear, which was to be performed at a different prison facility. The surgery was not performed, however, and it was not until approximately one year later, on June 13, 2006, that Plaintiff was referred to private physician Stephen J. Toner, M.D., who recommended that the surgery proceed as soon as possible (Doc. 27 at 5). On July 28, 2006, Plaintiff underwent at CT scan, which revealed a soft tissue mass in the left external ear canal (*id.* at 6). On November 7, 2006, Plaintiff underwent ear surgery (*id.*), but, according to Plaintiff, FCIM medical staff refused to provide appropriate aftercare, including failing to make arrangements for a follow-up appointment with Dr. Toner. When Plaintiff reported drainage from the ear, an appointment for January 4, 2007, was scheduled, but this appointment later was canceled (*id.*). Defendant Middlebrooks was aware that Plaintiff's medical care for her ear was being neglected but he ignored her complaints, as did Defendant Hernandez-Ricoff. Plaintiff was seen by an "outside physician" in May 2007, her last ear examination outside FCIM. According to Plaintiff, she has now lost 100% of the hearing in her left ear, as a result of Defendants' acts or omissions. Alleging that Defendants have been deliberately indifferent to her serious medical needs in violation of the Eighth Amendment, Plaintiff seeks a total of 2.5 million dollars in relief (*id.* at 7).

As Plaintiff was previously advised, the Supreme Court has held that certain causes of action for damages may be brought against a federal officer based on a violation of constitutional rights. Bivens, 403 U.S. at 396, including the violation of prisoner's Eighth Amendment right to adequate medical care. Carlson v. Green, 446 U.S. 14, 100 S. Ct. 1468, 1474, 64 L. Ed. 2d 15 (1980). The Eighth Amendment is violated when there is deliberate indifference to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). In order to establish a claim of deliberate indifference, the prisoner must show: (1) she had a serious medical

need (the objective component); (2) the prison official acted with deliberate indifference to that serious medical need (the subjective component); and (3) the official's wrongful conduct caused the injury. <u>Goebert v. Lee County</u>, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component, the prisoner must show that the prison official subjectively knew of a risk of serious harm, that the official disregarded that risk, and that the official's conduct was more than gross negligence. <u>Goebert</u>, 510 F.3d at 1326–27. Deliberate indifference may be shown where there is "[grossly incompetent or inadequate care," *see* <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989), the official refuses to provide medical care he knows is necessary, *see* <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700, 704 (11th Cir. 1985), or the official delays in providing necessary diagnostic care or medical treatment for non-medical reasons. *See* <u>H.C. by Hewett v. Jarrard</u>, 786 F.2d 1080, 1086 (11th Cir. 1986). Mere inadvertence, negligence, or medical malpractice does not rise to the level of deliberate indifference, <u>Estelle</u>, 429 U.S. at 105, "[n]or does a simple difference in medical opinion." <u>Waldrop</u>, 871 F.2d at 1033.

As it noted in its prior order directing Plaintiff to amend, the court is satisfied at this early stage of the litigation that Plaintiff's allegations are sufficient to meet the objective component of an Eighth Amendment medical claim, that is, she has identified a serious medical need regarding her ear condition. Her complaint remains deficient, however, in several respects. First, with respect to Defendant Morales, as the court has previously advised, Plaintiff must do more than allege negligent conduct, medical malpractice, or a difference in medical opinion, none of which rise to the level of deliberate indifference. <u>Estelle</u>, 429 U.S. at 105; <u>Waldrop</u>, 871 F.2d at 1033. Rather, in order to make out a claim of deliberate indifference Plaintiff must allege that Defendant Morales subjectively knew of a risk of serious harm to Plaintiff's health, that he disregarded that risk, and that his conduct was more than gross negligence. <u>Goebert</u>, 510 F.3d at 1326–27. Plaintiff alleges that in May 2005 she notified Defendant Morales of her decision to go forward with the recommended ear surgery and that the referral to Dr. Toner was delayed for over one year, but she does not state that Defendant Morales was responsible for this delay. If facts exist that support such

an allegation, Plaintiff must include them in her amended complaint. Her failure to do so may result in a recommendation of dismissal of her claim against this Defendant.

With respect to Defendants Middlebrooks and Hernandez-Ricoff, Plaintiff is again advised that supervisory officials are not liable under <u>Bivens</u> for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* <u>Cottone v. Jenne</u>, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); <u>Wayne v. Jarvis</u>, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" <u>Gray ex rel. Alexander v. Bostic</u>, 458 F.3d 1295, 1308 (11h Cir. 2006) (quoting <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. <u>Wayne</u>, 197 F.3d at 1106; <u>Weaver v. Toombs</u>, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." <u>Tittle v. Jefferson County Com'n</u>, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* <u>Harris v. City of Marion</u>, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The

standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff apparently contends that Defendants Middlebrooks and Hernandez-Ricoff were aware of the "neglect" she was experiencing by virtue of the administrative grievances she submitted to them. This vague allegation is insufficient to state a basis for liability against either Defendant under the Eighth Amendment. Plaintiff does not allege facts suggesting that Defendants Middlebrooks or Hernandez-Ricoff was subjectively aware of the severity of her ear condition or the alleged inadequacy of the care she was being provided during the relevant period. Furthermore, Plaintiff does not allege facts suggesting that either of these Defendants was personally involved in any decision regarding Plaintiff's medical treatment, that either Defendant implemented any policy which would have limited her care or treatment, or that there is otherwise any causal connection between the conduct of either of these Defendants and the alleged deprivation of adequate medical care. As Plaintiff has been informed, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. See Wayne, 197 F.3d at 1106. As presented, therefore, Plaintiff's allegations against Defendants Middlebrooks and Hernandez-Ricoff are insufficient to state a claim for relief. Without additional allegations, these Defendants therefore should be deleted from the fourth amended complaint.

Plaintiff should carefully review the foregoing to determine whether she desires to proceed with this action. If Plaintiff wishes to proceed, she must completely fill out a new civil rights complaint form, marking it "Fourth Amended Complaint." Plaintiff must limit her allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged federal violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular

Defendant harmed her, she should delete or drop that person as a Defendant from her complaint. Plaintiff's request for relief should be limited to only that which she could recover if she succeeds on her claims. Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded. N.D. Fla. Loc. R. 15.1.

Accordingly, it is **ORDERED**:

1.      The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 28 U.S.C. §1331 or 1346. This case number should be written on the form.

2.      Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and titled "Fourth Amended Complaint."

3.      Plaintiff's failure to file a fourth amended complaint may result in a recommendation that this action be dismissed for failure to comply with a court order.

**DONE AND ORDERED** this 26th day of October 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**