IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


WILLIE MAUDE JACKSON,
       Plaintiff,

vs.                                      Case No.: 5:09cv144/MCR/EMT

EDGAR MORALES, MLP,
       Defendant.
_____/

## REPORT AND RECOMMENDATION

     Plaintiff Willie Maude Jackson ("Plaintiff") is a federal inmate who proceeds pro se and has paid the filing fee in full.[1]  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C), and Fed. R. Civ. P. 72(b).  Now before the court is Plaintiff's fourth amended complaint filed under 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971),[2] or 28 U.S.C. § 1346 (Doc. 32).  The sole named Defendant, Edgar Morales, MLP ("Defendant"), has filed a motion to dismiss (Doc. 41, exhibits at Doc. 44), to which Plaintiff has filed a response in opposition (Doc. 59, exhibits attached).  As set forth below, the court recommends that Defendant's motion to dismiss be granted in part and denied in part.

----

[1] Having prepaid the filing fee in full, Plaintiff does not proceed as a pauper under 28 U.S.C § 1915. Nevertheless, her complaint remains subject to certain provisions of the Prison Litigation Reform Act ("PLRA").  The PLRA permits dismissal of a complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," on the basis that the complaint is frivolous, malicious, or fails to state a claim, regardless whether the plaintiff has paid the filing fee.  *See* 28 U.S.C § 1915A.

[2] <u>Bivens</u> recognized a private right of action for money damages against federal actors that engaged in alleged violations of the Constitution or laws of the United States.  <u>Bivens</u>, 403 U.S. at 397.

Background

Plaintiff is housed at the Federal Correctional Institution in Marianna, Florida ("FCIM"), where the events giving rise to her complaint took place. Plaintiff commenced this action on April 15, 2009, by filing her initial civil rights complaint[3] (*see* Doc. 1 at 7). As directed by the court, Plaintiff subsequently filed four amended complaints (Docs. 7, 20, 27, and 32). In the fourth amended complaint (Doc. 32), Plaintiff makes the following allegations. On November 18, 2003, FCIM medical services staff diagnosed her with an infection in her left ear and prescribed antibiotics (Doc. 32 at 5). Despite some initial improvement and repeated treatment, Plaintiff continued to have a discharge from the ear and headaches; for the next seventeen months she suffered pain and ongoing problems (*id.*). On May 20, 2005, Plaintiff submitted an Inmate Request form to staff, which she says was received by Defendant. In this Request, according to Plaintiff, she reported that she had been informed she needed to go to another institution to have surgery on her left ear, and she advised she was willing to be transferred in order to have the surgery (*id.*).

On June 13, 2006, more than one year after Plaintiff states she was advised she needed surgery on her ear and would be transferred to have the surgery, Plaintiff was referred to a private practitioner, ear/nose/throat specialist Stephen J. Toner, M.D. ("Dr. Toner"), who recommended immediate surgery (Doc. 32 at 5). According to Plaintiff, Dr. Toner opined at this visit that she had been "medically neglected" under FCIM's care (*id.* at 6). Plaintiff asserts that she "suffered needlessly for almost thirteen months while the scheduling of her appointment with a specialist was repeatedly delayed. [Defendant] knew the serio[u]sness of her condition and he also knew [of] the diagnosis and the risk of loss of hearing . . . [yet] failed to ensure that she was sent to a specialist

---

[3] As noted in the court's October 20, 2011, order (Doc. 58), Plaintiff attached to her initial civil rights complaint documents which suggest she may have attempted to present a claim for injury to federal officials under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 1346 (*see* Doc. 1 at 8–10). It is unclear from these documents whether Plaintiff fully exhausted her administrative remedies, and the court notes that under the FTCA such failure will deprive the court of subject matter jurisdiction over a plaintiff's claims. *See* Dalrymple v. United States, 460 F.3d 1318, 1326 (11th Cir. 2006).

In his motion, Defendant apparently refers to the FTCA (*see* Doc. 41 at 5, stating that Plaintiff had "failed to timely seek reconsideration or file the complaint after having received a certified letter denying the administrative claims herein as required by Title 28, United States Code, § 2401(b)"), but the reference is undeveloped and unclear. In any event, Plaintiff has submitted her complaints on civil rights complaint forms provided by the court and couched her claims in terms of civil rights violations. Thus, to the court's understanding, Plaintiff has not attempted to assert a claim under the FTCA in these proceedings.

in a timely manner" (*id.* at 5–6). Following her appointment with Dr. Toner, Plaintiff underwent a computerized tomography ("CT") scan in July 2006 which revealed a soft tissue mass in her left external ear canal (*id.*). On November 7, 2006, Plaintiff underwent surgery on the left ear (*id.*), but FCIM medical staff did not schedule or keep the follow-up appointments which Dr. Toner ordered. Plaintiff states that she is now completely deaf in her left ear. Plaintiff alleges that Defendant was responsible for her medical care and knew of her ear condition, but he failed to assure that Plaintiff timely was seen by a specialist, timely received recommended surgery, and was provided appropriate aftercare following surgery. Alleging that Defendant was deliberately indifferent to her serious medical needs in violation of the Eighth Amendment, Plaintiff seeks a total of 2.5 million dollars in relief (*id.* at 8).

On June 10, 2011, after seeking and receiving an extension on the ground additional time was needed to file a response to the fourth amended complaint (Docs. 39, 40[4]), Defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 41). In his motion, Defendant argues that Plaintiff has failed to demonstrate that the court has subject matter jurisdiction to hear her claims and also that she has failed to state an Eighth Amendment claim on which relief can be granted (Doc. 41 at 1).[5] With his motion Defendant has supplied two declarations, his own and that of Mary Kiwanuka ("Kiwanuka"), a Bureau of Prisons ("BOP") employee. Attached to Kiwanuka's declaration are copies of certain of Plaintiff's medical records, as well as copies of three BOP responses to Plaintiff's requests for administrative remedies (Doc. 44). In her response to Defendant's motion (Doc. 59), Plaintiff contends that the BOP's responses reflect that she in fact fully exhausted her administrative remedies and that her allegations are sufficient to state a claim for relief under the Eighth Amendment (Doc. 59 at 2).[6] Attached to

---

[4] In light of Defendant's indication that he anticipated filing a motion to dismiss (Doc. 39), and Plaintiff's status as a prisoner proceeding pro se, the court did not issue a scheduling order directing the parties to conduct discovery.

[5] More specifically, Defendant argues that Plaintiff failed to exhaust administrative remedies; her claim is time-barred; her allegations fail to state a claim for relief; and Defendant is entitled to qualified immunity (*see* Doc. 41 at 4–18).

[6] Plaintiff's response was not filed until November 14, 2011, after the following sequence of events. On June 13, 2011, the court directed Plaintiff to file a response to the motion to dismiss within thirty days (Doc. 45). She did not do so. Rather, Plaintiff commenced filing a series of deficient documents. These included a request for additional time

Plaintiff's complaint are five pages of medical records, dated March 11, 2004; April 22, 2004; July 8, 2004; and May 13 and 20, 2005 (*see* Doc. 59-1 at 1–5), none of which pertain directly to Defendant's defense of failure to exhaust administrative remedies.

Discussion

The court first addresses Defendant's contention that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Plaintiff failed to exhaust administrative remedies prior to filing this action.  Title 42 U.S.C. § 1997e(a) provides for  mandatory exhaustion of prison condition claims brought by inmates, whether the claims are filed pursuant to § 1983 or, as in this case, as a Bivens action.  Alexander v. Hawk, 159 F.3d 1321, 1324–26 (11th Cir. 1998).  A failure-to-exhaust defense is non-jurisdictional[7]; nevertheless, it is "like a defense for lack of jurisdiction in one important sense:  Exhaustion of administrative remedies is a 'matter[ ] in abatement, and ordinarily [does] not deal with the merits.'"  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008), quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 at 78 n.15 (3d ed. 2004); *see also* Wyatt v. Terhune, 315

---

in which to respond which, treating liberally, the court granted to the extent Plaintiff was given until August 1, 2011, to file the response (Docs. 46, 47), and numerous documents whose purpose could not be readily identified (either as a response to the motion, a proposed amended complaint accompanied by a motion for leave to amend, or a new action) (*see* Docs. 48–51).  On September 1, 2011, Plaintiff filed a motion for leave to amend and a proposed fifth amended complaint (Docs. 52, 53).  After allowing Defendant additional time in which to respond to the motion to amend (Docs. 54–57), on October 20, 2011, the court denied Plaintiff's motion (Doc. 58).

In the October 20, 2011, order the court also addressed certain aspects of Defendant's pending motion to dismiss.  First, the court discussed Defendant's argument for dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction on the ground Plaintiff failed to exhaust her administrative remedies.  The court observed that this argument (and relevant evidence) were properly considered under Rule 12(b)(6) as a matter in abatement for failure to state a claim for relief, rather than Rule 12(b)(1) as a jurisdictional matter as argued Defendant.  The court further noted that before it addressed the argument Plaintiff should be given an opportunity to file a response, with evidence, in opposition.  The court also informed Plaintiff that if she believed some discovery on the issue of exhaustion was needed, she should request it.  Plaintiff made no such request.  Second, with respect to Defendant's contention that Plaintiff's allegations failed to state an Eighth Amendment claim, the court observed that to address this claim it would need to rely on extrinsic evidence outside the pleadings (in the form of the exhibits Defendant attached to his motion), which would require converting the motion to one for summary judgment.  Because Plaintiff had not yet had an opportunity conduct any discovery, however, the court concluded it would not be appropriate to convert the motion at that time.  It advised the parties that it therefore anticipated recommending to the district court that the motion to dismiss on this ground be denied.

[7]  The Supreme Court has confirmed that exhaustion under the PLRA is not a jurisdictional prerequisite.  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2392, 165 L. Ed. 2d 368 (2006) (stating that it is "clear that the PLRA exhaustion requirement is not jurisdictional").

F.3d 1108, 1119 (9th Cir. 2003) ("[W]e have held that the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement. . . ."); Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (observing that the defense of failure to properly exhaust available administrative remedies under the PLRA is treated procedurally like a defense for lack of jurisdiction although it is not a jurisdictional matter).   An exhaustion issue ordinarily should be considered in a motion to dismiss and is not the proper subject for a summary judgment motion. Bryant, 530 F.3d at 1374–75; see also Solliday v. Federal Officers, 413 Fed. App'x 206, 208 n.3 (11th Cir. 2011), citing Bryant, 530 F.3d at 1374–75.  Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1373–74, 1376.  When a motion to dismiss is based on issues not enumerated under Rule 12(b) then, with respect to evidence presented to the court, Fed. R. Civ. P. 43(c) governs, "which permits courts to hear evidence outside of the record on affidavits submitted by the parties."  Bryant, 530 F.3d at 1377 n.16.

Based on the foregoing discussion, the court concludes that Defendant errs in arguing that this action is due to be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, on the ground Plaintiff failed to fully exhaust all of her administrative remedies.  Nevertheless, Defendant's having raised the issue of failure to exhaust as set forth in 42 U.S.C. § 1997e and presented evidence in support of dismissal based on this theory—and Plaintiff's having had an opportunity to respond and submit evidence in opposition—the court shall consider the motion as brought pursuant to Rule 12(b)(6).  See Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995) (treating improper dismissal under Rule 12(b)(1) as dismissal under Rule 12(b)(6)); see also Chandler v. Crosby, 379 F.3d 1278 (11th Cir. 2004) (noting that the Eleventh Circuit had not yet directly decided the question of whether § 1997e(a) was a jurisdictional mandate and thus whether "the district court should dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (for lack of subject matter jurisdiction) or 12(b)(6) (for failure to state a claim for which relief can be granted)" and declining to decide the question at that time).

Title 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  A civil action with respect to "prison conditions" means "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2); Higginbottom v. Carter, 223 F.3d 1259, 1260 (11th Cir. 2000).   Furthermore, exhaustion of administrative remedies means proper exhaustion of such remedies, i.e., under the terms of and according to the time set by BOP regulations.  *See* Woodford, 548 U.S. at 93–94.

The BOP has established regulations setting forth the procedures an inmate must follow to utilize its administrative remedy process.  *See* 28 C.F.R. § 542.10, *et seq*. According to these regulations, which provide a multi-tiered review process, the prisoner must file, with the warden of the facility at which she is housed, a formal written Administrative Remedy Request on a form BP-9 within twenty days from the date on which the basis for the Request occurred.[8]  28 C.F.R. § 542.14(a). If the inmate is dissatisfied with the response at the institutional level, she has twenty days in which to appeal by filing a form BP-10 with the appropriate Regional Director.  28 C.F.R. § 542.15(a).  Finally, if the inmate is not satisfied with the Regional Director's response, she has thirty days in which to appeal by filing a form BP-11 with the General Counsel for the BOP.  *Id.*

In this case, the court considers the relevant evidence supplied by Defendant, specifically the declaration of Kiwanuka, with the attached responses from the BOP to Plaintiff's Administrative Remedy Request (BP-9) and subsequent appeals (BP-10 and BP-11).  The court notes that, with respect to these documents, neither party has submitted copies of Plaintiff's actual BP-9, BP-10, or BP-11; rather, Defendant has submitted copies only of the BOP's responses to those documents. Nonetheless, it is noted that Plaintiff does not dispute the characterization of her BP-9, BP-10, or BP-11 in the BOP's responses.  In her declaration, Kiwanuka states that BOP records reflect that Plaintiff filed only three formal administrative remedies regarding her medical care (Doc. 44-1 at 2), a statement which Plaintiff does not challenge.  The three remedies include a BP-9, filed by Plaintiff on July 6, 2006, in which she sought surgery as recommended by a specialist on June 13,

---

[8]  The use of a preliminary step (resolution of the issues through an informal grievance using Form BP-8, 28 C.F.R. § 542.13(a)), does not appear to be at issue in this case.

2006; a BP-10, filed on or about August 1, 2006, in which Plaintiff appealed the administrative response to the BP-9; and a BP-11, filed on or about September 12, 2006, in which Plaintiff appealed the administrative response to the BP-10 (*id.*).

The substantive portion of the warden's July 18, 2006, response to Plaintiff's BP-9 (Doc. 44-1 at 3), states:

> This is in response to your Request for Administrative Remedy receipted July 6, 2006.  Specifically, you request a CT Scan be scheduled immediately, within the next few weeks, and immediate treatment after the CT Scan.
>
> A review of your medical record indicates that you were seen by the ENT on June 13, 2006.  The ENT recommended a CT scan of the temporal bones and a follow-up procedure called a tympanomastoidectomy.  You are scheduled for the CT Scan for the first available appointment time and will be scheduled appropriately for the tympanomastoidectomy once the CT scan results have been obtained and reviewed by the surgeon.

Doc. 44-1 at 3.

The August 21, 2006, response from the Regional Director to Plaintiff's BP-10 states, in pertinent part:

> This is in response to your Regional Administrative Remedy Appeal receipted August 1, 2006.  Specifically, you allege delay of care to address your left ear condition.  As relief, you request immediate surgery to repair your left ear.
>
> A review of your medical records revealed you have a history of Diabetes, Hypertension, Peripheral Vascular Disease, Asthma, Migraines, Psoriasis, Gastric Reflux, Immune Deficiency, Degenerative Joint Disease, and Chronic Otomastoiditis.  When developing a treatment plan, all your risk factors and degree of disability are taken under consideration.  You are considered a high risk surgical patient with moderate disability.  In accordance with policy, your case was reviewed by the local and regional Utilization Review Committee, prior to approving a medically indicated, non-urgent, surgical procedure.  Surgical intervention was approved and you are scheduled to undergo a routine Tympanomastoidectomy in the near future. . . .

Doc. 44-1 at 4.

The October 17, 2006, response to Plaintiff's BP-11 from the General Counsel's office in part states:

> You express concern regarding your hearing loss in your left ear.  As relief, you request a CT-Scan and surgery for your left ear.

Discussion with FCI Marianna staff and relevant portions of your medical record have been reviewed which reveal you have been diagnosed with chronic Otomastoiditis.  On July 28, 2006, you underwent a CT-Scan of your left ear.  A recommendation was made by the consultant Otolaryngologist for you to undergo a tympanomastoidectomy.  This procedure has been approved and FCI Marianna medical staff are [ ] in the process of scheduling you for the procedure. . . .

Doc. 44-1 at 5.

Plaintiff contends that the BOP's responses to her BP-9, BP-10, and BP-11 reflect that she properly and fully exhausted her administrative remedies prior to filing this action.  At most, however, the record only partially supports Plaintiff's contention.  First, Plaintiff's allegations reflect that she underwent surgery on her left ear in November 2006.   As Plaintiff submitted her BP-9 on July 6, 2006, with the response to the BP-11 being issued on October 17, 2006, her complaint that she was denied appropriate surgical aftercare obviously was not administratively exhausted.  Next, with regard to Plaintiff's other allegations, the response to Plaintiff's BP-10 notes her complaint of "delay" in addressing her left ear condition.  Based on the limited information now before it, the court concludes this response is sufficient to show that Plaintiff adequately exhausted her claims before the BOP that she was not timely seen by a specialist and did not timely receive recommended surgery.[9]  As "[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim," Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218–19 (11th Cir. 2010), citing Jones v. Bock, 549 U.S. 199, 219, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007), it matters not, for the purpose of assessing whether remedies have been adequately exhausted, that Plaintiff may or may not have named Defendant as the responsible party.  It appears that, as minimally required, Plaintiff "alert[ed] prison officials to the problem and [gave] them the opportunity to resolve it before being sued."  Id. at 1219.  Defendant argues that Plaintiff cannot show she exhausted her remedies against Defendant because he was not employed at FCIM at the time she filed her BP-9

---

[9]  Defendant does not assert, or attempt to demonstrate, that the BP-9 submitted July 6, 2006, arguably would be untimely as to any allegations arising more than twenty days prior (in other words, prior to approximately June 26, 2006).  Accordingly, the court does not address this matter.  See Turner, 541 F.3d at 1082 (stating that, in deciding a motion to dismiss for failure to exhaust administrative remedies, it is the defendant's burden to prove the plaintiff has failed to exhaust his available administrative remedies).

in July 2006,[10] and therefore contends he could not have been involved in any violation of her rights (Doc. 41 at 8).  In so arguing, however, Defendant "confuse[s] the question of [the Defendant's] liability on the merits of the claim with the separate and distinct question of whether [the Plaintiff] exhausted [her] administrative remedies."  *Id.* at 1218.

Based on the foregoing discussion, the court therefore recommends that Defendant's motion to dismiss for the failure to exhaust administrative remedies, treated as a motion pursuant to Rule 12(b)(6), be granted in part (as to the allegation that Plaintiff was denied proper surgical aftercare) and denied in part (as to the allegations that she was not timely seen by an ear/nose/throat specialist and did not timely receive surgery on her left ear).

The court next addresses Defendant's contention that all or some of Plaintiff's allegations against him should be time-barred.  Noting that he was not named as a Defendant in this case until March 25, 2010, Defendant argues that the applicable four-year limitations period should preclude any claims against him that arose before March 26, 2006 (Doc. 41 at 8–9).  Alternatively, Defendant argues, if the court calculates the statutory period as running from four years prior to the date the suit was filed rather than from the date he was named as a Defendant, any claims against him arising prior to April 15, 2005,[11] should be time-barred (*id.* at 9–10).

The statute of limitations applicable to 42 U.S.C. § 1983 actions applies to <u>Bivens</u> claims.  <u>Kelly v. Serna</u>, 87 F.3d 1235, 1239 (11th Cir. 1996), and § 1983 claims are governed by the forum state's residual personal injury statute of limitations.  <u>City of Hialeah, Fla. v. Rojas</u>, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002).  As the applicable statute of limitations in Florida is four years, Fla. Stat. Ann. § 95.11(3), that is the limitations period relevant to the instant case.

---

[10]  In his declaration Defendant states that his duty station was transferred from FCIM to another BOP facility on September 4, 2005 (*see* Doc. 44 at 2), at which time he stopped providing medical care to Plaintiff.

[11]  In what appears to be a clerical error, Defendant cites the date of the commencement of the statutory period as May 16, 2005 (Doc. 41 at 9).  As noted above, however, this action is treated as having been filed on April 15, 2009 (*see* Doc. 1 at 7).  Although the complaint was docketed on April 17, 2009, it was signed, and therefore deemed filed, on April 15, 2009, pursuant to the "prison mailbox rule." <u>Houston v. Lack</u>, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule").  The four-year statutory period thus commenced running on April 15, 2005.

A cause of action accrues for purposes of the statute of limitations in a <u>Bivens</u> case when the plaintiff knows or has reason to know of an injury and who has inflicted it.  <u>Kelly</u>, 87 F.3d at 1238–39.  Plaintiff's allegations suggest, and she does not argue otherwise, that she knew or had reason to know of any alleged injury and who inflicted it with respect to events that occurred between November 18, 2003 (the date she alleges she was first seen by BOP staff for ear problems), and April 14, 2005 (the day prior to the date this action was initiated).  Thus claims arising from events during that period—whether implicating Defendant or any other person—should be time-barred.  With respect to claims arising from events that occurred on or after April 15, 2005 (the date four years prior to the filing of this case and the commencement of the statutory period), such claims are not time-barred.  Accordingly, as Defendant argues in the alternative, Plaintiff's claims against him should be limited to events that occurred on or after April 15, 2005 (*see* Doc. 44 at 2).[12]  To this extent, therefore, Defendant's motion should be granted.

Defendant also argues that dismissal of the complaint under Rule 12(b)(6) is warranted because Plaintiff has failed to state a claim for relief against him.  More specifically, Defendant submits that he was transferred from FCIM on September 4, 2005, which ended his participation in Plaintiff's medical care; accordingly, he contends, he could not have acted with deliberate indifference concerning Plaintiff's medical care after that date (Doc. 41 at 10).  Additionally, Defendant points to certain medical records he has supplied to the court which reflect that, during the limitations period prior to his transfer, he treated Plaintiff on only one occasion, May 20, 2005 (*id.* at 13).  According to Defendant, on that date Plaintiff complained of an ear infection, reported no ear pain, and expressed an interest in proceeding with surgery (*id.*).  She was given a prescription for ear drops, told to follow up in one week, and instructed regarding the use of the medication (*id.*).  Defendant argues that this scant medical record and his extremely limited involvement with Plaintiff's care simply do not support an Eighth Amendment claim against him.  Defendant also submits that he is entitled to qualified immunity.

---

[12]  Plaintiff has not disputed Defendant's assertion that he was transferred from FCIM on September 4, 2005, when he no longer had any responsibility for Plaintiff's medical care, nor does it seem she has any basis for doing so.  In any event, it appears that for practical purposes, with respect to any claim against Defendant, the events at issue in this case must have occurred between April 15, 2005, and September 4, 2005.

As the court noted in its October 20, 2011, order, to address Defendant's substantive argument for dismissal it would need to rely on extrinsic evidence outside the pleadings, in the form of Defendant's declaration and the selected medical records he supplied with his motion to dismiss (Doc. 44). A motion to dismiss under Rule 12(b)(6) that relies on matters outside the pleadings must be treated as one for summary judgment. Fed. R. Civ. P. 12(d); Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion."). Therefore, with respect to Defendant's argument that the fourth amended complaint should be dismissed for the failure to state an Eighth Amendment claim for relief, if the court considered the evidence presented by Defendant it would have to convert the motion to dismiss to a motion for summary judgment. At this stage of the litigation, however, with no discovery having yet been conducted, the court concludes it would be inappropriate to convert the motion, as Plaintiff has not had an opportunity to present all materials that might be pertinent to a summary judgment motion under Rule 56. Fed. R. Civ. P. 12(b); *see also* Snook v. Trust Co. of Georgia, Bank of Savannah, 859 F.2d 865, 870 (11th Cir. 1988) ("[S]ummary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery."). Defendant has not asked that the motion to dismiss be converted to a motion for summary judgment, and this court has not done so. Consequently, in this Report and Recommendation, the court does not rely on matters outside the pleadings, specifically, Plaintiff's medical records and Defendant's declaration. Absent any evidence to support Defendant's argument that Plaintiff cannot establish an Eighth Amendment claim based on the denial of adequate medical treatment, the contention cannot succeed. The court therefore recommends that the motion to dismiss on this ground be denied.

Conclusion

This court recommends that Defendant's motion, treated in its entirety as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), be granted in part and denied in part. With respect to the issue of exhaustion of administrative remedies: as to the allegation that Plaintiff was denied proper surgical aftercare, the motion should be granted; as to the allegations that Plaintiff was not timely seen by an ear/nose/throat specialist and did not timely receive surgery on her left ear, the motion should be denied. The motion should also be granted to the extent that Plaintiff's claims against

Defendant are limited to events that occurred on or after April 15, 2005; any claims arising from events that occurred prior to that date are time-barred.  Finally, to the extent Defendant argues that Plaintiff has failed to state an Eighth Amendment claim against him, the motion should be denied.

This case should be referred to the undersigned for further proceedings.  As directed by separate order issued this date, these proceedings shall include a brief but adequate opportunity for the parties to conduct limited discovery.  Absent prior authorization by the court, such discovery shall be restricted to matters pertaining to Plaintiff's allegations that she was not timely seen by an ear/nose/throat specialist and did not timely receive surgery on her left ear, which alleged events occurred on or after April 15, 2005.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Defendant Edgar Morales' motion (Doc. 41), treated in its entirety as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), be **GRANTED in part** and **DENIED in part**:

        A.      With respect to the issue of exhaustion of administrative remedies:  as to the allegation that Plaintiff was denied proper surgical aftercare, the motion should be **GRANTED**; as to the allegations that Plaintiff was not timely seen by an ear/nose/throat specialist and did not timely receive surgery on her left ear, the motion should **DENIED.**

        B.      With respect to the issue of a statutory time-bar: the motion should be **GRANTED,** to the extent that Plaintiff's claims against Defendant are limited to events that occurred on or after April 15, 2005.

        C.      With respect to Defendant's argument that Plaintiff has failed to state an Eighth Amendment claim against him, the motion should be **DENIED**.

2.      That this case be referred to the undersigned to conduct further proceedings, including a period of limited discovery as set forth above.

**DONE AND ORDERED** this 5<u>th</u> day of January 2012.




/s/ *Elizabeth M. Timothy*_____
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).