IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIE MAUDE JACKSON,
        Plaintiff,

vs.                                             Case No.: 5:09cv144/MCR/EMT

EDGAR MORALES, MLP,
        Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Willie Maude Jackson ("Plaintiff") is a federal inmate who proceeds pro se and has paid the filing fee in full in this action filed under 28 U.S.C. § 1331 and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971),[1] or 28 U.S.C. § 1346. The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C), and Fed. R. Civ. P. 72(b). Now before this court is the motion for summary judgment filed by the sole Defendant, Edgar Morales, MLP ("Defendant") (Doc. 64, including exhibits and statement of facts; separate statement of facts at Doc. 65). Plaintiff has filed a response in opposition (Doc. 69). As set forth below, the court concludes that Defendant is entitled to judgment in his favor as a matter of law and thus recommends that Defendant's motion for summary judgment be granted.

---

[1] Bivens recognizes a private right of action for money damages against federal actors that engaged in alleged violations of the Constitution or laws of the United States. Bivens, 403 U.S. at 397.

**Procedural History**

Plaintiff is housed at the Federal Correctional Institution in Marianna, Florida ("FCIM"), where the events giving rise to this action took place. In the fourth amended complaint (Doc. 32), Plaintiff alleges that Defendant, formerly a mid-level practitioner ("MLP") in the medical department at FCIM, failed to assure that Plaintiff timely was seen by an ear/nose/throat specialist for a chronic condition of Plaintiff's left ear, timely received recommended surgery on the ear, and was provided appropriate aftercare following ear surgery. According to Plaintiff, as result of Defendant's actions she lost all hearing in her left ear. Asserting that Defendant was deliberately indifferent to her serious medical needs in violation of the Eighth Amendment, Plaintiff seeks a total of 2.5 million dollars in relief (*id.* at 8).

The court ordered service of the fourth amended complaint, following which Defendant moved for dismissal of this action. Adopting this court's recommendation, the district court granted in part and denied in part Defendant's motion (*see* Docs. 32, 41, 59, 60, and 63). The district court granted the motion to dismiss to the extent Plaintiff's claims against Defendant must be limited to events that occurred on or after April 15, 2005, finding that any claims arising from events that occurred prior to that date are time-barred (*see* Doc. 63). Addressing Defendant's contention that Plaintiff had failed to exhaust administrative remedies prior to commencing this suit, the court granted the motion as to Plaintiff's claim she was denied proper surgical aftercare and denied the motion as to Plaintiff's claims she was not timely seen by an ear/nose/throat specialist and did not timely receive surgery on her left ear.[2] The district court referred the matter to the undersigned for further action, including discovery on Plaintiff's surviving claims.[3]

---

[2] In addition to his statutory time bar and exhaustion arguments, in his motion to dismiss Defendant contended Plaintiff failed to establish an Eighth Amendment claim against him (and, consequently, that he was entitled to qualified immunity). He sought to support this argument with certain of Plaintiff's medical records. Denying this aspect of Defendant's motion, the court explained that in order to consider Defendant's evidence it would have to convert the motion to dismiss to one for summary judgment. The court declined to convert the motion because Plaintiff had not yet had an opportunity to conduct any discovery.

[3] Specifically, discovery was restricted to matters pertaining to Plaintiff's claims she was not timely seen by an ear/nose/throat specialist and did not timely receive surgery on her left ear, which alleged events occurred on or after April 15, 2005.

Case No. 5:09cv144/MCR/EMT

In its January 5, 2012, Case Management and Scheduling Order, this court directed the parties to conclude discovery no later than March 30, 2012, and to file dispositive motions not later than twenty days after the close of discovery (Doc. 61 at 1, 3). The Order also instructed the parties as to the requirements and importance of summary judgment consideration and informed them that a showing of good cause and diligence during the initial discovery period would be required before any extension of the discovery period would be granted (*id.* at 1–2, 3–4). Defendant timely filed the instant Rule 56 motion on April 19, 2012, in which he asserts Plaintiff has failed to establish an Eighth Amendment inadequate medical care claim; Defendant also asserts his entitlement to qualified immunity (Docs. 64, 65).[4] After Defendant filed his motion for summary judgment, the court issued an advisement order concerning Rule 56 review and gave Plaintiff until May 18, 2012, in which to file a response to the motion (*see* Doc. 66). On May 8, 2012, the clerk docketed a motion filed by Plaintiff which effectively sought to extend the discovery period so that Plaintiff could obtain answers to certain interrogatories (Doc. 67). The court denied this motion, finding that Plaintiff had neither shown good cause nor diligence during the initial discovery such that an extension of the discovery period should be permitted (Doc. 68). Subsequently, within the time allotted for filing a response to Defendant's motion, Plaintiff filed a document titled "Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment" (Doc. 69).

**Preliminary Matters**

The court first notes that the "affidavit" submitted by Plaintiff with her response (Doc. 69) has not been notarized. Without proper notarization the document does not conform to the definition of an affidavit, which is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public." Black's Law Dictionary 62 (8th ed. 2004). Title 28 U.S.C. § 1746 provides an alternative to a sworn statement. This statute requires the statement to include an averment, signed and dated, that the statement is true under the penalty of perjury. Plaintiff's statement apparently attempts to include an averment,

---

[4] Included with Defendant's motion for summary judgment are two declarations, his own and that of Mary Kiwanuka ("Kiwanuka"), a Bureau of Prisons ("BOP") employee. Attached to Defendant's declaration are copies of certain of Plaintiff's medical records, and attached to Kiwanuka's declaration are three BOP responses to Plaintiff's requests for administrative remedies (Docs. 64-1 and 64-2).

but the averment is not sufficient to comply with the requirements of § 1746.[5]  While the averment is signed, it is not dated, though the absence of a date does not necessarily render the document invalid.  *See* Peters v. Lincoln Elec. Co., 285 F.3d 456, 475–76 (6th Cir. 2002) (noting that where extrinsic evidence likely could demonstrate the period when the document was signed, the document would not be rejected for lack of a date).  More problematic is that while the averment references the penalty of perjury, it makes no mention that the statement given is true.  Although the certificate of service attached to the "affidavit" indicates that the "foregoing statement" is true and signed under penalty of perjury, fairly construed this averment refers to the date and manner of service rather than the contents of the "affidavit" itself (Doc. 69 at 7).  In short, for the foregoing reasons, the court is unable to consider Plaintiff's statement as either an affidavit or a declaration.  Nevertheless, the court does accept the document as a statement of disputed facts and response to Defendant's motion.

The court additionally notes that Plaintiff's fourth amended complaint contains an averment, dated and signed under penalty of perjury, that the statements of fact contained therein are true and correct (*see* doc. 32 at 8).  Accordingly, the fourth amended complaint may be considered the equivalent of an affidavit and is competent evidence for summary judgment purposes in this case insofar as it asserts non-conclusory allegations based on Plaintiff's personal knowledge.  Sammons v. Taylor, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992); Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986).  To the extent warranted, the court therefore has considered this pleading as evidence.

**Material Facts**

As this case comes before the court on Defendant's motion for summary judgment, the court must view the facts in the light most favorable to Plaintiff, the non-moving party.  *See* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).  The court does so here, taking those facts from the parties' relevant pleadings and summary judgment materials of record (Docs. 32; 59-

---

[5] Plaintiff prefaces the list of thirty-nine facts with this averment: "I, WILLIE MAUDE JACKSON, Plaintiff Pro Se for the matter at bar, Declare under penalty of perjury, from my firsthand knowledge for the facts given hereinbelow, and if required to give oral testimony, shall so state, to wit: . . . ."

1,[6] 64-1, and 64-2; *see also* Doc. 69). *See* Fed. R. Civ. P. 56(c); N.D. Fla. Loc. R. 56.1. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review on Plaintiff's surviving claims (specifically, that after April 15, 2005, Defendant failed to assure she was timely seen by an ear/nose/throat specialist and timely received surgery on her left ear) may not be the actual facts. *See* Montoute v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

Some of the pertinent facts in this case occurred prior to the commencement of the four-year statutory period on April 15, 2005. In November 2003 Plaintiff was diagnosed with an infection in her left ear, for which FCIM staff prescribed antibiotics (Doc. 32 at 5). Despite some initial improvement and repeated treatment, over the next seventeen months Plaintiff continued to experience problems with the ear (*id.; see also* Doc. 69 at 2). Physician Steve Harris, M.D., examined Plaintiff on March 11, 2004 (*id.* at 1, 3–4; *see also* Doc. 69 at 2, referencing treatment by Dr. Harris on March 3, 2004). Dr. Harris noted in his clinical report that he had "[d]iscussed [with Plaintiff] that this [is] almost entirely a drop treated type illness," and he prescribed the use of Ciprodex otic drops (Doc. 64-1 at 3). He further noted that he had discussed with Plaintiff that if the granulation and thickening in the ear did not resolve with medical therapy "an otology consult probably may have to be undertaken" (*id.* at 4). The following month, on April 22, 2004, Dr. Harris noted that the granulation of the ear drum and canal was almost completely resolved (*id.* at 7; *see also* Doc. 69 at 2). Dr. Harris discontinued use of the ear drops he had previously prescribed, advised Plaintiff that the granulation could recur from time to time, and informed her that although her hearing in the left ear had improved it probably would not be as good as in the right ear. Dr. Harris also informed Plaintiff that if the granulation or drainage were to recur, "the best way to treat this would be with Ciprodex drops" (Doc. 64-1 at 7). On July 8, 2004, Dr. Berrios saw Plaintiff at FCIM for skin and ear problems (Doc. 59-1; *see also* Doc. 69 at 2). He noted that the left ear had some drainage, with severe granulation over the ear drum (Doc. 59-1 at 1). His impression was

---

[6] Plaintiff did not supply any medical records with her response to the motion for summary judgment (Doc. 69). She did, however, supply a few such records in connection with her response to Defendant's motion to dismiss (*see* Doc. 59-1). Most of these documents are duplicates of medical records provided by Defendant, with the exception of one dated July 8, 2004 (Doc. 59-1 at 1). As Defendant has not challenged the authenticity of the July 8, 2004, document (which in any event appears to be similar in appearance and content to Plaintiff's other medical records), and as it seems relevant to Plaintiff's allegations concerning the treatment and advice she received regarding her left ear condition, the court references it in this statement of facts. The court also notes that although the signature on the record is difficult to decipher, Plaintiff identifies it as that of Dr. J. Berrios, an FCIM physician (*see* Doc. 69 at 2).

chronic left ear tympanic membrane granulation. Dr. Berrios recommended that Plaintiff be seen by an ear/nose/throat specialist; more specifically, Dr. Berrios stated that Plaintiff "will need a possible otology eval[uation] for surgery if no improv[ement]. She understands that she will need to go to a medical center for the surgery and agreed [with] this" (*id.*).

The following events occurred after the commencement of the statutory period on April 15, 2005. Between May 16, 2005, and September 4, 2005, Plaintiff was treated multiple times for various conditions, including her left ear problem, by FCIM health care providers other than Defendant (Doc. 64-1 at 1–2). Defendant treated Plaintiff on only one occasion during that period, May 20, 2005 (*id.* at 2), when Plaintiff complained of a left ear infection with drainage (*id.* at 5; *see also* Doc. 69 at 3). On examination, Defendant noted a clear but moist left ear canal with mild swelling; his examination was also positive for bulging of the ear drum and a yellowish fluid level (Doc. 64-1 at 5). Based on his findings and Dr. Harris' April 2004 recommendation, Defendant prescribed Ciprodex drops for Plaintiff, told her to follow up in a week, and educated her about her medication (*id.* at 5–6).[7] In response to Plaintiff's expressed interest in having surgery, Defendant advised her that it would have to be performed at "Carswell" [presumably, the Federal Medical Center at Carswell, Texas] (*id.* at 5). Also on May 20, 2005, Plaintiff notified the FCIM medical department, in a written notice received by Defendant, that she was willing to transfer to Carswell for the surgery (Doc. 32 at 5).

On September 4, 2005, Defendant was transferred from FCIM to another BOP facility. After that date Defendant no longer had responsibility for providing medical care to any FCIM inmates (Doc. 64-1 at 2).[8] On November 7, 2006, after a June 13, 2006, recommendation of surgery by

---

[7] Plaintiff states that Defendant informed her that she was scheduled for an appointment on May 31, 2005, but that she in fact was not scheduled or identified on the "call-out" notice as having an appointment that date (*see* Doc. 69 at 3).

[8] Defendant identifies the relevant window of time in this case, for purposes of his potential liability, as being May 16, 2005 (the date he states the statutory period commenced), through September 4, 2005, the date of his transfer from FCIM (Doc. 64-1 at 2). The latter date is undisputed. With respect to the former date, however, Defendant is incorrect.
  As discussed in this court's Report and Recommendation on Defendant's motion to dismiss (*see* Doc. 60 at 9, n.11), Plaintiff's initial complaint was docketed on April 17, 2009, but it was signed (*see* Doc. 1 at 7), and therefore deemed filed, on April 15, 2009, pursuant to the "prison mailbox rule." Houston v. Lack, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"). The applicable four-year statutory period in this case thus

ear/nose/throat specialist Stephen J. Toner, M.D., and a July 2006 computerized tomography ("CT") scan which revealed a soft tissue mass in Plaintiff's left external ear canal, Plaintiff underwent surgery on her left ear (Doc. 32 at 5–6; Doc. 65-2 at 3–5).

**Applicable Legal Standards**

<u>Summary Judgment</u>

In order to prevail on a motion for summary judgment, the movant must show that the non-movant has no evidence to support her case or present affirmative evidence that the non-movant will be unable to prove her case at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If the defendant successfully negates an essential element of the plaintiff's case, the burden shifts to the plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The non-movant must show more than the existence of a "metaphysical doubt" regarding the material facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. <u>Cordoba v. Dillard's, Inc.</u>, 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the non-moving party will not suffice to overcome a motion for summary judgment." <u>Young v. City of Palm Bay, Fla.</u>, 358 F.3d 859, 860 (11th Cir. 2004); *see also* <u>Celotex Corp.</u>, 477 U.S. at 324. The non-movant must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. <u>Celotex Corp.</u>, *supra*; <u>Owen v. Wille</u>,

---

commenced running on April 15, 2005. Nonetheless, as he did in his motion to dismiss, in the instant motion for summary judgment Defendant persists in identifying the statutory period as starting May 16, 2005.

    Although Defendant fails to include one month (April 15, 2005, through May 15, 2005) in the period during which he states he only treated Plaintiff on one occasion, there is no allegation by Plaintiff, much less evidence of record, that Defendant was involved in Plaintiff's medical care between April 15, 2005, and May 15, 2005. Thus Defendant's error appears to be inconsequential.

117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the non-moving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). Conclusory, uncorroborated allegations by a non-movant in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion. *See* Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

Evidence presented by a party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to that party Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, the party opposing summary judgment still bears the burden of coming forward with sufficient evidence of every element that he must prove. Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

Eighth Amendment

"Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).[9] Indeed, it is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the

---

[9] Estelle and Goebert were both brought pursuant to 42 U.S.C. § 1983. Although the instant matter is a Bivens action, the court properly relies on cases considered under § 1983 because Bivens and § 1983 are substantially similar. *See* Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995) (courts generally apply § 1983 law in deciding Bivens cases); Kelly v. Serna, 87 F.3d 1235, 1239 (11th Cir. 1996) (cases addressing issues raised under 42 U.S.C. § 1983 are equally applicable to claims raised in a Bivens action).

Case No. 5:09cv144/MCR/EMT

level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

"To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) [the defendant's] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009) (citing Goebert, 510 F.3d at 1326). The first two factors thus implicate, respectively, an objective component and a subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). Under the first factor, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)). Under the second factor, the prison official must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted). The third factor requires an affirmative causal connection between the defendant's acts and the alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by Defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, a plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). Where, however, the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

Qualified Immunity

"The doctrine of qualified immunity provides that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The immunity is not only a defense from personal liability for government officials sued in their individual capacities, but also a defense from suit. See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

Qualified immunity involves a two-part analysis. First, at summary judgment the court must determine whether the plaintiff's allegations, and the evidence viewed in her favor, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 200–02, 121 S. Ct. 2151, 2155–56, 150 L. Ed. 2d 272 (2001). Second, the constitutional right at issue must have been "clearly established," such that a reasonable officer should have known that his conduct violated the plaintiff's

constitutional rights.  *Id.*  "Both elements must be satisfied for an official to lose qualified immunity."  Grider v. City of Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir. 2010).  The steps need not be analyzed sequentially; if the law was not clearly established, the court is not required to decide if the defendant actually violated the plaintiff's rights, although it may do so.  Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009), citing Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

**Discussion**

Defendant argues that Plaintiff cannot establish the objective component of an Eighth Amendment medical claim because "she has presented no evidence that her medical care placed her at a substantial risk of serious harm at any point during her incarceration" (Doc. 64 at 9).  Moreover, Defendant contends, Plaintiff has failed to establish the subjective component of her claim:  she has not shown that Defendant had subjective awareness of an objectively serious medical need, that Defendant disregarded an existing risk of serious harm, or that Defendant's conduct was more than negligent (*id.* at 11–12).  According to Defendant, at most Plaintiff's allegations challenge Defendant's medical judgment, and such allegations are insufficient to give rise to a constitutional violation (*id.* at 13).  Moreover, absent the showing of a constitutional violation, Defendant submits, he is entitled to qualified immunity (*id.* at 14–16).  In her response to the motion for summary judgment, Plaintiff asserts that Defendant ignored Dr. Berrios' July 8, 2004, recommendation of surgery and that Defendant did not see her after the visit on May 20, 2005, although he advised her another that visit was scheduled for May 31, 2005 (Doc. 69 at 3).  Plaintiff also apparently maintains that she submitted an informal grievance to Defendant concerning the delay in arranging appropriate treatment for her ear condition and that, in or after July 2006, she also filed three formal requests for administrative remedies regarding her medical care (*id.* at 4–5).[10]

The court first concludes that Plaintiff has failed to establish that a genuine issue of material fact exists in connection with the objective component of her Eighth Amendment medical claim.

---

[10] Plaintiff's response also includes details concerning her November 2006 surgery and allegations about the inadequate post-operative care she alleges she received (Doc. 69 at 5).  As discussed above, the district court granted Defendant's motion to dismiss Plaintiff's claim that she was denied proper surgical aftercare.  As argument concerning this aspect of Plaintiff's Eighth Amendment claim therefore is not properly before the court at summary judgment, the court does not address it further in this Report.

Dr. Berrios recommended in July 2004 that Plaintiff should be seen by an ear/nose/throat specialist for her chronic left ear condition and would possibly require an otological evaluation for surgery if her condition did not improve (Doc. 59 at 1). This observation alone is sufficient to show that Plaintiff suffered from an objectively "serious medical need," and correspondingly, that she has satisfied the first subsidiary requirement of the objective component. Estelle, 429 U.S. at 104. Nevertheless, Plaintiff has not shown that Defendant's response to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Id. at 105–06. As the undisputed facts reveal, Defendant examined and treated Plaintiff on only one occasion—May 20, 2005—when he prescribed the same medication which Dr. Harris had used successfully in March/April 2004 and had recommended for future use in the event of a recurrence. Moreover, contrary to Plaintiff's contention, Defendant did not "ignore" a recommendation of surgery made by Dr. Berrios a few months later, in July 2004. In fact, the record reflects that Dr. Berrios made no such recommendation. Rather, Dr. Berrios recommended an ear/nose/throat specialist consultation and commented that Plaintiff would possibly need an otology evaluation for surgery if her condition did not improve (Doc. 59-1 at 1). The evidence references only one recommendation of ear surgery, made by ear/nose/throat specialist Dr. Toner on June 13, 2006, which—Plaintiff does not dispute—was some nine months after Defendant's transfer from FCIM and the cessation of his treatment of inmates at that facility (see Doc. 32 at 5–6; Doc. 65-2 at 3–5). Plaintiff's assertion that Defendant delayed her receipt of surgery on her left ear after it had been recommended clearly has no merit, as by the time Dr. Toner recommended ear surgery in June 2006 Defendant's involvement with Plaintiff's medical care had long since ended. Likewise, with respect to any informal grievance Plaintiff may have submitted to Defendant complaining of delay in arranging an ear/nose/throat referral, Defendant's response was not so unsatisfactory that it subjected Plaintiff to the unnecessary and wanton infliction of pain. Plaintiff does not identify the date she contends she submitted the informal grievance to Defendant concerning her ear condition. Regardless, in the likely event that the grievance was submitted soon before the three related formal requests for administrative remedies (all of which were dated July 2006 or later), it is doubtful Defendant received it prior to his September 2005 departure from FCIM, after which he had no further responsibility for Plaintiff's medical care. To the extent Defendant was responsible for scheduling an appointment for Plaintiff

with an ear/nose/throat specialist prior to his departure from FCIM, any failure to do so does not implicate a constitutional tort.  As discussed, Defendant's response to Plaintiff's serious medical need concerning her ear was to prescribe the otic drops that Dr. Harris had previously recommended for future use should the condition recur.  Additionally, even if Plaintiff was not placed on the "call-out" sheet to be seen by Defendant on May 31, 2005, despite being advised by Defendant that a follow-up appointment with him had been scheduled for that date, there is no evidence that Defendant caused the missed call-out.  More importantly, there is no evidence that a single missed appointment for a chronic ear condition, after a prior appointment eleven days earlier, subjected Plaintiff to the unnecessary and wanton infliction of pain.

Plaintiff has also failed to show there is a genuine issue of material fact with respect to the subjective component of an Eighth Amendment claim.  Plaintiff has not come forward with any evidence that even remotely suggests that Defendant acted with an attitude of deliberate indifference toward her.  Estelle, 429 U.S. at 105.  There is no evidence before this court that shows Defendant had subjective knowledge that Plaintiff would be subjected to the risk of serious harm, i.e., deafness, by failing to schedule an appointment with an ear/nose/throat specialist during the relatively brief time during the statutory period that he might have provided Plaintiff with medical care (April 15, 2005, through September 4, 2005) or that he disregarded that risk.  Indeed, Plaintiff has pointed to virtually no medical evidence whatsoever concerning Defendant, apparently because other than the May 20, 2005, record there is none.  Any failure by Defendant to schedule an appointment with a specialist during the period from April 15, 2005, through September 4, 2005, in effect constitutes a challenge to the appropriateness of Defendant's medical judgment.  Such conduct, however, especially in light of the fact that Defendant treated Plaintiff's ear and in a manner consistent with Dr. Harris' prior recommendation, does not rise to the level of committing a constitutional tort. Harris, 941 F.2d at 1507.  Even if, in the exercise of sound professional judgment, Defendant should have scheduled the appointment but failed to do so, incidents of mere negligence or malpractice are insufficient to establish a constitutional violation.  Id. at 1504.  While Plaintiff may have desired an immediate or earlier appointment with a specialist, a difference of opinion over matters of medical judgment simply does not support a constitutional claim.  Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

For the foregoing reasons the court concludes that Plaintiff has not established an Eighth Amendment medical claim against Defendant with respect to her contentions that he failed to assure she was timely seen by an ear/nose/throat specialist for her chronic ear condition and timely received ear surgery. Because Plaintiff's allegations, and the evidence viewed in her favor, do not establish a constitutional violation, Defendant is entitled to qualified immunity.[11]

**Conclusion**

Upon consideration of Plaintiff's Eighth Amendment claim and the evidence submitted, the court recommends that Defendant's motion for summary judgment be granted for the reasons set forth above.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Defendant Edgar Morales' motion for summary judgment (Doc. 64) be **GRANTED.**

2. That the clerk be directed to enter judgment in Defendant Morales' favor and close this case.

**DONE AND ORDERED** this 18th day of June 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Plaintiff does not state in which capacity she sues Defendant, although the court has assumed she sues him in his individual capacity. As discussed, in his individual capacity Defendant is shielded from liability by qualified immunity. Assuming that Plaintiff additionally seeks to sue Defendant in his official capacity, the court notes that the doctrine of sovereign immunity precludes a Bivens claims for monetary relief against an individual defendant in his official capacity, as well as Bivens claims against the United States. Official capacity claims for monetary damages based upon allegations of constitutional violations are barred because they are considered suits against the United States which has not waived its sovereign immunity for such claims. FDIC v. Meyer, 510 U.S. 471, 484–86, 114 S. Ct. 996, 1004–06, 127 L. Ed. 2d 308 (1994); *see also* Marsden v. Federal B.O.P., 856 F. Supp. 832, 835 (S.D.N.Y. 1994) (claims for money damages against individual federal defendants in an official capacity must be dismissed for lack of jurisdiction) (citing Kentucky v. Graham, 473 U.S. 159, 165–67, 105 S. Ct. 3099, 3104–05, 87 L. Ed. 2d 114 (1985)).

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**